UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HERNANDEZ SEGOVIA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | Case No. 1:26-cv-07732-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND TO ORDER PETITIONER'S IMMEDIATE RELEASE<br><br>(A Number: A-241-948-891)<br><br>(Doc. 1)<br><br>**7-Day Objection Period** |

Petitioner Richard Hernandez Segovia ("Petitioner"), a federal immigration detainee proceeding pro se, initiated this action on September 22, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241, while in custody of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility. (Doc. 1).

**Relevant Background**

In his petition, Petitioner alleges that he is a native and citizen of Venezuela and entered the United States of America on August 22, 2022. *Id.* at 2. He thereafter applied for asylum. *Id.* He alleges that during his four-year residency in the United States, he has not accumulated any criminal history, has obtained work authorization and a social security number, and possesses a driver's license. *Id.* at 5-6.

On August 29, 2026, he was arrested by "Parking Patrol" while stopped on his motorcycle

in Washington, D.C., as he was resting and eating. He was directed to present his driver's license, after which the patrol officer called an ICE agent, who arrived on the scene. *Id.* at 5. Petitioner was then taken into custody by "police" and subsequently placed in ICE detention. *Id.*

Respondents filed a response to the petition in which they argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A) pending the outcome of his ongoing removal proceedings but acknowledge that the Ninth Circuit has rejected this interpretation of the Immigration and Nationality Act. (Doc. 8) (citing *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026)). Respondents also proffer documents that reflect Petitioner was encountered by immigration authorities in Eagle Pass, Texas, close to the same date Petitioner identifies as the date he entered the United States (August 23, 2022). (Doc. 8 at 10 [I-213]). The I-213 indicates that Petitioner was "required to report for ATD" (*id.*), an acronym for ICE's Alternatives to Detention program that permits noncitizens "to remain in their communities — contributing to their families and community organizations and, as appropriate, concluding their affairs in the U.S. — as they move through immigration proceedings or prepare for departure."[1] Shortly after his enrollment in ATD, Petitioner was terminated as being "no longer required to participate." *Id.* The I-213 also corroborates Petitioner's allegations that he obtained work authorization, which remains active through November 2028, and possesses a valid Maryland driver's license. *Id.*

Respondent's documents addressing Petitioner's arrest and detention on August 29, 2026, present two somewhat inconsistent narratives. The report of the U.S. Park Police officer that encountered Petitioner states that he observed Petitioner "illegally parked on a motorcycle" at an identified intersection in Washington, D.C. *Id.* at 5 ([Dep't of Interior Incident Report]). He contacted Petitioner and directed him to present his driver's license "to verify that he had the correct Motorcycle endorsement." *Id.* The officer did not observe an endorsement on the license and his call to dispatch confirmed that Petitioner did not possess a motorcycle endorsement. Because Petitioner was sitting on the motorcycle with the keys inserted in the ignition, the officer concluded that Petitioner was unlawfully operating the motorcycle without proper permit. The officer arrested

[1] *See* https://www.ice.gov/features/atd (last visited Oct. 14, 2026).

Petitioner and transported him for booking. At some point, the officer contacted ICE and learned that Petitioner was "wanted for immigration purposes." *Id.* at 6.

In contrast, the I-213 states that the Park Police officer contacted ICE with a request to verify ID on a subject for illegal U-turn who did not speak or understand English. *Id.* at 10.

**Discussion**

Respondents correctly concede that Petitioner is entitled to a bond hearing under *Rodriguez Vazquez* pursuant to 8 U.S.C. § 1226(a). However, given that Petitioner previously was released by immigration authorities, which necessarily required their determination that he did not then present a risk of flight or danger to the community (*see* 8 C.F.R. § 1236.1(c)(8)), Petitioner also retains a liberty interest in his freedom from detention that implicates protections under principles of due process. *See Padilla v. U.S. Immigration and Customs Enforcement*, -- F.4th --, 2026 WL 2822044, at *11 (9th Cir. Sept. 21, 2026) (noting "decades of precedent establishing that noncitizens within the United States, legally or not, generally are within the protections of the Fifth Amendment's Due Process Clause."); *e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting "the actions of the Government in allowing Petitioner to remain in the community for over five years strengthen Petitioner's liberty interest. Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.") (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute") (citing *inter alia Young v. Harper*, 520 U.S. 143, 147-49 (1997)).

Because Petitioner retains a liberty interest in his freedom from detention, the undersigned has considered the record evidence in the context of the due process framework set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). For the reasons that follow, pursuant to that framework, the undersigned concludes that Petitioner is entitled to a pre-deprivation bond hearing at which the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified.

First, Respondent either concurs with or does not dispute Petitioner's allegations that he has lived in the United States for over four years, and during that time has not accumulated any criminal history, has obtained work authorization and a social security number, was actively working pursuant to his work permit at the time of his arrest and re-detention, and possesses a driver's license. Measured against the three-factor *Mathews* test, these unrebutted facts and circumstances strongly suggest that Petitioner is entitled to the highest degree of due process to protect against the risk of the government erroneously curtailing his liberty, even accounting for the government's strong interest in enforcing the immigration laws.

Second, considering the divergence in the narratives Respondent proffers about Petitioner's contact with law enforcement and arrest, there is some indication that the contact and arrest were pretextual. But even if the encounter was not pretextual, there is nothing in the record to suggest that the government reasonably harbored an urgent need to arrest Petitioner without a pre-deprivation hearing. The prevailing rule is that the government must provide a noncitizen with a pre-deprivation hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty …"). A narrow exception to this default rule exists where "it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *See Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (citing cases); accord *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035–37 (N.D. Cal. 2025); *O.A.C.C. v. Wofford*, No. 1:25-cv-01652-DAD-CSK (HC), 2025 WL 3485221, at *4-5 (E.D. Cal. Dec. 4, 2025). Here, considering Petitioner's lack of criminal history and the nature of the misdemeanor infraction that resulted in his arrest, it is not objectively reasonable to conclude that requiring Petitioner to appear for a pre-deprivation hearing would have been impractical or otherwise incentivized his flight.

Third, Petitioner's release by immigration authorities upon their initial encounter with him approximately four years prior to his arrest necessarily required them to conclude that Petitioner was neither a flight risk nor a danger to the community (*see supra*). Under these circumstances,

even in the light of disputed issues of fact concerning the nature and severity of Petitioner's alleged violation of terms of his release, the government should bear the burden of establishing at a pre-deprivation hearing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *E.g., Singh v. Andrews*, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3248059, at *6 (E.D. Cal. Nov. 19, 2025) (requiring government to carry burden by clear and convincing evidence, notwithstanding disputed issues of facts involving the petitioner's alleged violation of release conditions); *M.V.I. v. Andrews*, No. 1:25-cv-01440-JLT-SKO, 2025 WL 3154403, at *13-14 (E.D. Cal. Nov. 12, 2025) (same). "Doing so is logical" because "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *M.R.R. v. Chestnut*, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *14 (E.D. Cal. Nov. 24, 2025) (relying on *Pinchi v. Noem*, 792 F. Supp. 3d 1025, at 1034, 1038 (N.D. Cal. 2025)); accord *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111-13 (E.D. Cal. 2025).

Accordingly, the undersigned will recommend that the petition for writ of habeas corpus be granted and that Respondent be ordered to immediately release Petitioner.

**<u>Conclusion and Recommendation</u>**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED.
2. Respondents be ORDERED to release Petitioner immediately.
3. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
4. Respondents be ORDERED to provide Petitioner with a copy of this Order upon his release.
5. The Clerk of the Court be DIRECTED to enter judgment in favor of Petitioner and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondent, and the fact that the parties have briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 14, 2026**

UNITED STATES MAGISTRATE JUDGE